May it please the Court, my name is Dan Siegel and I represent the Appellant John Saybolt. I will be using my fifteen minutes to discuss materiality and the standard of review as they apply to Mr. Saybolt. My colleague Mr. Erba will be using the remaining five minutes to discuss those issues as they apply to Mr. Welch. With the permission of the Court I will reserve three of my fifteen minutes for rebuying. There are three reasons why materiality should apply across the board in a false claims prosecution. First, fraud implies materiality. Second, the purpose of the overall legislation was to address fraud. And third, absent a consistent fraud requirement, there will be confusion in the jury instructions. How do you read the footnote seven in the Meader case? I see footnote seven as an indication that we don't meet the first two standards of the Welch case. The first standard of the Welch case was, is materiality an explicit element of the statute. And we don't meet that. The second element of the Welch case, which is addressed in footnote seven, is whether the, it is the first element that is addressed in footnote seven, which is that footnote seven cited a couple of statutes where materiality was made an express condition of both false and fraudulent claims. So we wouldn't meet that requirement. It looks like you might, I think a natural reading of it would be that materiality requirement is not needed with regard, when you have a statute that says false and fraudulent. Well what it says, the way I read it is to say that materiality under the first of the Welch standards can be found if materiality is used in the statute. And certainly there are statutes where materiality applies explicitly to false or fraudulent claims. And there's the second. Does the claim inherently imply materiality? And it's clear that false claims in and of itself, in isolation, doesn't apply a materiality standard, at least to common law. So we agree in footnote seven that we wouldn't meet that test. But footnote seven of Nieder doesn't reach the third element of Welch, which is what is the statutory purpose? What is the legislative history? Because Nieder found that that statute used a fraud related term, so materiality was inherent. So they never reached the third issue. So let's turn to that. What does the legislative history say? As we cited in our brief, the statute is intended to address fraud. Which statute? The criminal... Why don't we start with the actual language, the plain language of the two statutes? Don't we have to look both at 286 and 287 before we ever get to the legislative history? And if that's the case, isn't the structure and language of those two sections different? To respond to your point, the first element, the statute, the wording of the statutes is different. On the conspiracy statute, you have the word defraud, which modifies false and fictitious... And I said the structure and language deliberately, because the word defraud really is a predicate in 286, is it not? It is certainly applied equally to the three. In the second one, there is no fraud term, which similarly applies to fraud, false, fictitious, or fraudulent. So you turn to the question of, well, do we distinguish between fraudulent claims and false and fictitious claims? Certainly the Neeter case is clear... But 287 lists them in the disjunctive. That is correct. The or, so what do... Well, the indictment certainly does charge fraudulent claims by these defendants, and the indictment doesn't charge that those fraudulent claims are material. So even if you read them differently in the disjunctive, the indictment didn't charge the materiality of the fraudulent claims. So then we turn to the next question. How is a fraudulent claim not material? I don't think a fraudulent claim can be not material. Fraudulent claim inherently involves materiality. But false claims do not. But false claims do what? Well, our argument is that because of the legislative history, you read all three together. They all, you know, the conspiracy statute and the substantive statute all came out of the same 1863 Civil War fraud statute. And the language, the essential language, continues on into the present day. And the Supreme Court looked at the history of this language and said that the purpose of these statutes was to deal with fraud. But there's a quote from the Hess case, which I cite at page nine of our brief, which I think may be relevant and important to our discussion. The Supreme Court said, these provisions considered together indicate a purpose to reach any person who knowingly assisted in causing the government to pay claims which were grounded in fraud. That suggests to me, and I would submit it suggests to you, that when they were saying that when you're paying a false claim or a fictitious claim or a fraudulent claim, that's a claim that's grounded in fraud. And so that's why the legislative history, I submit, the third prong of the Wells case, which wasn't reached in neither, may be the dispositive point in this case. Look, you can, if you want to be an extreme textualist, textualist, and just how about  Isn't it redundant? If you want to take. How about just a normal textualist? If you want to be a normal textualist, and if you don't go to the legislative history and say, okay, we take the words on their own meaning. And fraudulent has a materiality requirement and false and fictitious doesn't. Consider the jury instructions in a case like this with 36 separate counts. You've got to tell the jury that there are 36 counts and on each count there are three alternative theories of prosecution and materiality applies to the third theory of prosecution but not the first two theories of prosecution and you've got to be careful because you need to be unanimous in applying the differing definitions to the differing theories of prosecution on each of the 36 counts. And you have written interrogatories that list all that out. Well, I submit to you that there is a value to jury instructions which are clear, which are understandable, and which avoid the necessity for a special verdict form. And in this case you can reach that decision by reading the conspiracy statute and the substantive statute together as they were in the first statute, by looking at the legislative history, and by applying materiality across the board. I don't have too much time so I want to briefly discuss the question of structural error. And on structural error we defer to the Solicitor General. Some circuits apply a harmless error rule. Some circuits apply a structural error rule. This circuit, in our estimation and according to the opinions that we've seen, has applied structural error. And if the government disagrees with that proposition they need to explain why the Solicitor General was wrong. So just to sum up the argument that we're advancing before the court today. Fraud textually implies materiality. The legislative history suggests that the statute overall was aimed at addressing fraud. And the McNally case says that when you look at a disjunctive statute, and this is a disjunctive statute, you can interpret the statute in light of the overall statutory purpose. So there is a principled statutory basis for applying materiality consistently across the board to claims that are false, fictitious, and fraudulent. Mr. Sable preserved his claim. He gave an opportunity to the government to amend the indictment to add materiality. They chose not to take that. How should, in your view, the government have added materiality? Is your argument essentially that the word material or materiality should appear within the four corners of the indictment? Yes, Your Honor. I think the judge in our... So that answers the first question. So then in your view, does that preclude fraudulent factual specificity within the indictment as sufficing at any time for an averment of materiality that is short of the explicit use of the term? I suppose if you had used the phrase that's used to define materiality, having a tendency to influence the actions of an agency, if you'd used the exact phrase that was used in the Supreme Court decisions, maybe you could get away with not using the exact word materiality. But the case law is pretty clear, I submit, that when you have a statute where there is an implied term and it's not in the text of the statute, you have to charge it in such a way that the defendant, that the grand jurors are put on notice of the implied term. They couldn't have been because they didn't return an indictment that included the word materiality. Now there's the recent Resendez-Ponce case where the government, the Supreme Court created a narrow exception to that rule in a case where there was a term attempt which for a long period of time had included a substantial step element as an element of the offense. In that case they said, well, it's inherent there. But in this case the government didn't agree that materiality was an element of the offense. The court found that it wasn't an element of the offense. So the Resendez-Ponce exception doesn't apply. So if materiality is an element, Mr. Sable gave notice, he gave them a chance to put in a new indictment, he preserved his claim, and we submit that his conviction should be a new indictment. But harmless error is the proper way to look at this. Do you automatically lose? No, Your Honor. We do not concede that the error in this case was harmless. Our argument No, but if we decide to go harmless error way. I understand. If you decide to go with the majority of the circuits that say that harmless error applies to an omission of an element in the indictment, first of all, we submit that the Third Circuit case law has the attorney general. We understand. Right. But if that were the ruling, our argument would be that materiality is not so overwhelmingly clear that the error is harmless beyond a reasonable doubt under constitutional standards. Certainly the government would argue that all of these claims met a materiality standard. But you've got to remember that these guys were putting in tax returns that were so outrageous, they asserted in one of the returns that the defendants were running a major poultry farming operation in an apartment building in Kensington directly under the Frankfurt L. But they were so outrageous that they got $234,000 or whatever. And that's the argument that I would have That's a nice outrageous. It's nice outrageous. But if I'm a defense attorney and I go to trial, I would like to be able to point out to the jurors that there's a materiality requirement, and that if you find that no reasonable organization could have taken this in whole cloth, then you have a reasonable doubt. So the more outrageous the fraud, the better shot you have of winning. Well, I submit you ought to ask yourselves one question. We pointed out to the government that there was a split of authority among the circuits. They could have easily amended the indictment or supplied a new indictment to include the word materiality. Why didn't they do it? I submit to you that the one defense that defendants may have had in a case like this is to argue to the jurors that this was such a cockamamie idea that they were trying to run by the IRS that no reasonable organization would accept it. To emphasize, we think it's a structural error circuit. We understand your position. Thank you, Your Honor. Thank you, Mr. Siegel. We'll have you back. Maybe they can sell the book rights to this. May it please the Court, Andrew F. Erba for Mr. Welch. We join Mr. Siegel's arguments, and I will just point out to the Court that there is, although he mentioned in passing, there is a jury instruction question here. The judge, we asked the judge to charge her materiality. She said that she felt materiality wasn't part of the statute in her instructions, while framing and covering the statute did not include the issue on materiality. So we would just suggest that if the Court would find that materiality is part of the statute, then you'd have to also reach whether the absence of jury instructions was a critical component of the case, and we feel for the arguments Mr. Siegel gave, it was. Thank you very much. Thank you very much, Mr. Erba. Ms. Foa? Good morning. I am Pamela Foa. I represent the government in this case. Your Honors, this Court should affirm the convictions of Defendant Sebald and Welch. Wouldn't it just be easier just to have just stuck in the word material into the indictment? It's not the law, Your Honor. The issue is not what's simple or easy according to. You wouldn't be here today, probably, isn't that right? This is my pleasure and my honor to be here today, Your Honor. On a day like today? Particularly on a day like today to show that I can make it. Your Honor, I think that the most important thing that we learn combining Welch and Nader is first, false statement, false claim, fictitious claim clearly does not include materiality. And where you have a statute which itself is structurally incoherent, essentially, if you add materiality, then the lesson is that you don't. The conspiracy statute 286 really talks about fraudulent claims. I would read it differently. I would read this statute and 287 as focused on deceit and not on materiality. I would read the introductory language. How do we ignore the fraud? It says conspiracy to defraud the government with respect to claims. Whoever enters into any agreement, combination of conspiracy to defraud the United States. I ask your adversary specifically that, that that is a predicate to 286 liability. Here is how I would read that, your Honor. I would read that as introductory language that tells you, advises everyone, that we are not dealing in the ordinary case. Because what follows that language is how do you commit fraud in this case? How do you do it? It tells you. Or in this case, how do you commit the conspiracy in this case? And it tells you how to do it by filing a false, fictitious, or fraudulent claim. And so my argument to the court is that take the, take the initial language as essentially introductory. Note that 286 is very broad in its terms. I don't even understand what you mean by introductory. That suggests to me a certain surplusage. And to suggest a certain meaningless surplusage would be contrary to basic canons of statutory construction. We've got to assume that every word here has some meaning and import and that Congress so intended it. I think the issue is not, the issue is how to understand fraud in 286. And my suggestion to the court is that you read it as a broader statute than an ordinary common law fraud. And you read it that way because the statute tells you the way you commit fraud in this case is by agreeing to submit a false, fictitious, or fraudulent claim. And we know from Wells that that does not include materiality. If it's false or fictitious, but not if it's fraudulent. Your Honor, I'm not certain that I would agree with that analysis. I think that there are some claims. Take the claims at issue here. Submissions to the IRS in the names of real people with made up companies, made up figures, made up returns. Are they false? Are they fictitious? Are they fraudulent? They certainly fit a common pattern of deceit, which this statute is aimed at. But it's a disjunctive statute, as has been pointed out. What's wrong with Mr. Siegel's suggestion, which actually he didn't put it forth as a proposal, having special verdict sheets? Some including materiality and some not including materiality. Is that a proper way to read this statute and to charge a jury? I don't think it is, Your Honor, because I think it asks the government to make distinctions which even philosophers couldn't make. Is an IRS claim for a refund in the name of a true person with a fictitious business, with a made up son, is that a false claim? I think it is. So they'll all be false claims. Is it a fraudulent claim? Yeah. They'll all be fraudulent claims. It is certainly possible that there's a circumstance where it's just fraudulent. But here, I don't think that it is, that there's anything in the statutory language which talks about any claim in 287 that requires that we distinguish between and among the ways in which this particular claim violates the offense. But 286 talks about you could have a punishment if you're found to have obtained or aided or obtaining the payment or allowance of any false, fictitious or fraudulent claim. It could go anywhere from a fine to imprisonment. So it goes from the spectrum. And one could make an argument there that you've got to break it down if it's material. The sentence here was how long? The sentences that were imposed? In this case, to Saybolt and to Welch. I believe that there was a five-year sentence and a ten-year sentence. Mr. Welch was sentenced to a ten-year term of imprisonment. Mr. Saybolt, I believe it was five years, Your Honor. So the argument would be that you have to claim that to get that kind of punishment, that kind of sentence, that what they did was material? Or else you would argue that, I guess in your case, you would argue it's subsumed in there? But clearly it isn't subsumed for false. No question that these claims were material claims. To go back to Judge Smith's question earlier, the factual circumstance here was that the claims were from between $9,000 to $25,000 for refunds. Those are on their face material claims. And I would argue that if the court believes that materiality is an element of 287, notwithstanding the plain language and the Welch analysis, then I would argue then under Resendez-Ponce, this materiality is in this indictment. This indictment is not defective. The facts on their face tell you it's a material claim against the government for money. In the alternative, if the court were to decide that the indictment is defective and that the language of the indictment, which was not general, but was specific with respect to each claim, how much money was claimed with each tax return, the government believes that the correct analysis here is the harmless error analysis. And that on that analysis, this court should not reverse the convictions. Is that consistent with the case law in the Third Circuit? I believe it is, Your Honor. If you look at Tolliver, in which this court decided that a Fifth Amendment violation and a Sixth Amendment violation of a defendant's rights did not rise to the level of a structural error such as failure to give someone an attorney at a critical time, failure to have an unbiased judge, it did not affect the structure that we have put in place that assures fairness in the proceedings. And on that basis, it decided that the harmless error standard applies. It's a constitutional claim, and so the claim is that it must be beyond a reasonable doubt. The government must show beyond a reasonable doubt that there was no harm to the defendant. In this case, that is not a difficult test. The government put in evidence the filing of these claims, asking for returns, as I said, of between $9,000 and $25,000. There was no contest about the filing of these terms at all. The evidence on materiality, the evidence on the sums sought, was uncontested, uncontroverted. There is no prejudice, which has been raised in court. There's no prejudice. There are no new facts to go back and retry this case where there is no disputed issue with respect to materiality would do a dishonor to the court, to the reputation of the court, to the integrity of the court. It would violate the very standard that the court has put in place in these cases. So in our view, even were the court to find that materiality is an element, both of the substantive offense and the conspiracy offense, the analysis should be a harmless error analysis, and on that analysis, on this record, which the court has to look at, there is simply no controversy with respect to the government's proof of the claim. Did Nieder, did the Supreme Court apply the harmless error analysis on the materiality? I think they did. Excuse me a moment, Your Honor. I do not know whether it was harmless error or plain error in Nieder. The difference, however, really goes to who has the burden, as this court has found, of proof. Nieder was harmless error. Thank you, Your Honor. And in Nieder, we have a Sixth Amendment violation, certainly as serious as a Fifth Amendment violation, because there you have the pedigree that did not find the omitted element. The same kind of error as was in Olano, as it was in Cotton, and again and again, the courts have found where there is uncontroverted, overwhelming evidence, as there was in this case, the verdict should be affirmed. You know, back on your original argument, I understand your position that if materiality is implied into 287, then the statute would not reach some of the conduct that it is intended to reach, which is the false or fictitious claims, which have never been held to include a materiality element. But I'm still unclear as to your reason why we disregard that requirement for the fraud aspect of this. What's the rationale for doing so? I think the rationale is the structure of the statute. Are you going to have a statute where you are going to demand the government that it characterize for each claim, is it false, is it fictitious, is it fraudulent? Rather than look at whether or not each claim presented a deceitful, false claim to the government, any kind of claim. What I imagine is a claim where someone is entitled, say, to $1,000. They file a claim for $1,010. What this statute does, I believe, understood coherently, the same standard for each of the alternatives is no one has to argue about whether that $10 is material or not. The point is that the government is protected against every kind of false claim. I think that's what 287 does. I think 286 tells us that the simple reading is it makes a conspiracy to violate 287 an offense, and it tells us that we're not dealing with the ordinary case of fraud.  A fictitious claim, no materiality element. So we don't need it for a fraudulent claim either. So in whichever way we decide, we decide that false and fictitious trumps fraud or fraud trumps false and fictitious. I don't think it's a question of trumping, Your Honor. I think that what Nieder told, instructs, is that we have to look at the structure of a statute to elicit our understanding of it. And our understanding of a statute, and where that structure itself appears to contradict, to have contradictory terms, we interpret it without the contradiction. That wasn't the case in Nieder. It was bank fraud. It was fraud at every turn. And in Wells, it was a false statement at every turn. Here we have a combination. And where we have a combination, it's not a question of trumping. It simply is coherently analyzing these three prongs and looking at what they do have in common, which is the deceit element. Let me see if I can try another way. Is materiality an essential element of these two crimes charged under 286 and 287? No, Your Honor. I thought what you were saying was even if it was an essential element, it was impliedly contained within 286 and 287. You're saying it's just not an essential element at all. That is what I'm saying, Your Honor. That's right. I read these statutes as addressing all false claims against the government, any false claim against the government, any agreement to file a false claim against the government, regardless. But it's certainly an essential element for fraud, right? By itself. And the conspiracy statute talks about fraud. So it has to be an essential element for the conspiracy statute. Well, I respectfully disagree that where a statute tells you, as this one does, that the way in which the fraud is committed is by the payment or allowance of any fictitious or fraudulent claim. But to read it the way you want it to read, it would have to read, whoever enters into any agreement, combination, or conspiracy to defraud or have, Your Honor, I think that what I'm saying is in this statute, and Congress has a right to look at, to change the common law meaning, to broaden the common law scope, in this statute, defraud covers the agreement to present a fictitious claim, a false claim, or a fraudulent claim. If fraud covers it, then that means it's an essential element, doesn't it? I don't think it has to be. I think the other thing that another circuit looked at was the form that Congress itself presented with respect to this very statute. It gave us an indictment form. That's form 10. It's in the appendix to the government's brief, and there is no materiality element. Congress did not intend materiality to be part of these statutes. It intended to capture any and every false claim, regardless of materiality. We think that on either way the court goes, if the court believes that materiality must be an element, I think these statutes should rise and fall together in truth. Materiality is an element. Let it be an element of both. Otherwise we get very peculiar results if it's an element of 286 and not of 287. We don't think it should be an element of either. But even if it is, we believe that there was fair notice, clearly implied the materiality of the false claims here, and beyond that on any harmless error standard, constitutional standard, it is beyond reasonable doubt. There is no prejudice to either defendant, no harm done. And of course, with respect to any claim for which the standard is an error for a similar reason, there was no harm. And so we ask the court to affirm these convictions. Good. Any other questions? Thank you, Ms. Voa. What's the import of form 10? To be honest with you, I don't recall form 10, so I'm going to have to rely on the briefs on that point. But the point that I did want to address dealt with another question that you had asked, Ms. Voa, about harmless error, and the response was the Nieder case, and the Nieder case applied harmless error. It's important to remember that Nieder applied harmless error to an omission of an element in the jury instructions. So harmless error applies to a jury instruction issue. The Supreme Court has never held... But then you have Cotton, which also basically covers that gap, right? Well, then it's important to discuss Cotton, because Cotton is a plain error case applicable to a defendant who did not preserve a motion to dismiss the indictment. What happened in Cotton was the defendant was charged with a drug offense prior to Apprendi. They didn't charge the drug quantity in the indictment. So it went to trial, the defendant was convicted, the judge found that he was responsible for a ton of drugs, was eligible for the higher sentence. On appeal, Apprendi has decided, and the defense attorney learns for the first time, that drugs should have been an element, the quantity should have been an element in the indictment. So he says, plain error standard, we should have a new trial, because they omitted an element from the indictment. The court of appeals says, even under a plain error standard, we'll give it to you, because it's a jurisdictional failure, citing the old jurisdictional law. The Supreme Court gets it and says, no, we're going to get rid of that old jurisdictional test. It's too broad, it doesn't apply to the modern era. So we look to whether the omission from the indictment meets a plain error test, since you, Mr. Defendant, didn't file a motion to dismiss the indictment. Was it an error? Yes. Was it plain? Yes. Did it affect the defendant's substantial rights? Well, the defendant argued, yes, it's a structural error when you don't put a term in the indictment. And the Supreme Court said, well, we're not going to decide that issue in the Cotton case. But even if it was a structural error. I thought Cotton implied that omissions in an indictment are treated the same as omissions from a jury instruction. No. Cotton found that the fourth plain error standard, the reputation of the court, did not justify plain error relief based upon an omission in the indictment where the defendant did not preserve an objection to the indictment. It said it deferred structural errors. We're ruling that because you didn't make the objection, because the evidence of drug quantity was overwhelming, we're denying your plain error appeal even if it was structural error. So Cotton doesn't affect a defendant like Mr. Sable, who up at the beginning of the case objected to the sufficiency of the indictment and objected to the omission of the element and preserved his claim. Cotton applies in a distinguishable situation where the indictment omitted an element, but that issue was not preserved in the district court. Thank you. Sable, thank you very much. The case was very well argued. Take the case under advisement.